IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TENIKA S. CARTER,                     :

    Plaintiff,                        :

v.                                    :      Civil Action No. GLR-12-868

VNA, INC.,                            :

    Defendant.                        :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant VNA, Inc.'s ("VNA") Motion for Summary Judgment and Motion to Strike Plaintiff Tenika S. Carter's Cross-Motion for Summary Judgment. (ECF Nos. 19, 23). The procedural challenge, notwithstanding, the underlying case involves a claim that VNA terminated Ms. Carter's employment, based on her pregnancy and request for maternity leave, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (2012) and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. (2012).

The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, VNA's Motion for Summary Judgment will be granted and Ms. Carter's Cross-Motion for Summary Judgment will be stricken.

## I. BACKGROUND

The following facts are either undisputed or construed in the light most favorable to Ms. Carter. Ms. Carter worked full-time as a registered nurse for VNA, Inc., an entity member of MedStar Health, Inc. ("MedStar"), from December 7, 2006, until she was terminated on June 30, 2010. MedStar is a not-for-profit regional healthcare system serving Maryland and the District of Columbia.

VNA provides in-home healthcare services for patients who are disabled or living with a chronic condition. When a patient fitting these criteria is nearing discharge from a MedStar system hospital, his or her physician may write an order for at-home care and refer the patient to VNA. VNA maintains offices in each MedStar system hospital, including Good Samaritan Hospital ("GSH"), where Ms. Carter worked.

In 2009, due to a drop in its volume of business, VNA decided to downsize, resulting in a reduction in force ("RIF"). At that time, VNA had a RIF policy, which provided: "when there are fewer positions available than there are qualified employees who successfully meet competencies required for a given position, job eliminations will be based on the following factors and in the following order: performance assessments, including annual performance evaluations; department seniority; and company seniority." (Def.'s Mot. Summ. J. App. 6, at 3

["RIF Policy"], ECF No. 19-7). Instead of applying these criteria on a department-specific basis across all of its hospitals, VNA had an established practice of applying these criteria on a site-specific basis.

VNA implemented its RIF policy by first identifying which sites would have eliminations, and then by eliminating employees at those sites based on the policy. Ultimately, VNA terminated thirty employees as part of the 2009 RIF. After the 2009 RIF, VNA decided it needed to further downsize via another RIF in 2010. VNA narrowed its decision to implement the 2010 RIF to two Baltimore-area hospitals with dropping referral volume, one of which was GSH.

During the relevant time period, GSH employed Ms. Carter as a clinical consultant. In April 2010, Ms. Carter learned she was pregnant and informed her Human Resources Manager, Corrine Trancucci, that she wished to take FMLA leave for the pregnancy. On April 15, 2010, Ms. Trancucci informed Ms. Carter that her FMLA leave had been approved.

On May 12, 2010, however, Ms. Carter's supervisor, Shelly Garfield, informed Ms. Carter that her employment would terminate on June 30, 2010, pursuant to a RIF, unless she found another position at VNA or elsewhere within the MedStar system prior to that date. VNA explained that it needed to eliminate a clinical consultant position from GSH because clinical

consultants were solely responsible for handling referrals, the volume of referrals at GSH were down, and thus GSH could manage with one less clinical consultant. VNA chose to eliminate Ms. Carter instead of Carol Bevans, who worked part-time as a clinical consultant at GSH and had more seniority within the system. At the time of Ms. Carter's termination, Ms. Bevans was the only other clinical consultant at GSH. There were, however, six other clinical consultants employed by VNA at other Baltimore-area hospitals: Patti Armijo, Cecilia Callahan, Cecilia Hawkins, and Catherine Stewart worked full-time; Jennifer McCarley and Gina Williams worked part-time.

On March 20, 2012, Ms. Carter commenced this civil action, claiming that she was terminated based on her pregnancy and request for maternity leave, in violation of Title VII and the FMLA. Following discovery, VNA moved for summary judgment.

## II. DISCUSSION

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

5

specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." Deans v. CSX Transp., Inc., 152 F.3d 326, 331 (4th Cir. 1998) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (internal quotations omitted)).

**B.  Analysis**

   **1.  Pregnancy Discrimination**

   Ms. Carter cannot survive summary judgment on her Title VII employment discrimination claim because she has not established a prima facie case or produced sufficient direct or indirect evidence that she was terminated because of her pregnancy.

   The Pregnancy Discrimination Act ("PDA") requires employers to treat pregnant employees "the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). Courts analyze pregnancy discrimination claims in the same manner as any other Title VII sex discrimination claim. DeJarnette v. Corning Inc., 133 F.3d 293, 297 (4th Cir. 1998) (citation omitted); Holmes v. E.Spire Commc'ns, Inc., 135 F.Supp.2d 657, 661 (D.Md. 2001) (citation omitted). A plaintiff, therefore, bears the burden of showing that she was a victim of intentional discrimination. DeJarnette, 133 F.3d at

6

297. Additionally, a plaintiff bears the burden of establishing that defendants discriminated against her "because of her pregnancy." Id.; Holmes, 135 F.Supp.2d at 661; 42 U.S.C. §§ 2000e-2(a)(1)-(2).

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).

Under the McDonnell Douglas framework, the plaintiff first must establish a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802. Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's prima facie case. See Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir. 2000) (citing Burdine, 450 U.S. at 255 n.10).

The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." _Burdine_, 450 U.S. at 253. To be sure, as the Supreme Court observed in _St. Mary's Honor Ctr. v. Hicks_, "a reason cannot be proved to be 'a pretext _for discrimination_' unless it is shown _both_ that the reason was false, _and_ that discrimination was the real reason." 509 U.S. 502, 515 (1993) (emphasis in original). In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." _Evans v. Techs. Applications & Serv. Co._, 80 F.3d 954, 959 (4th Cir. 1996) (citing _Burdine_, 450 U.S. at 253).

To establish a prima facie case of discrimination in the context of a RIF dismissal, a plaintiff must show that:

> (1) she is a member of a protected class; (2) she was selected from a larger group for termination; (3) she was performing at a level substantially equivalent to the lowest level of those retained in the group; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing.

_Miller v. Sybase, Inc._, No. DKC 2006-1176, 2007 WL 5463518, at *4 (D.Md. Aug. 8, 2007) (citing _Bello v. Bank of Am. Corp._, 320 F.Supp.2d 341, 347 (D.Md. 2004)).

Ms. Carter does not appear to produce direct or indirect evidence of intentional discrimination. Instead, Ms. Carter contends only that she has established a prima facie case under the McDonnell Douglas burden-shifting framework. The Court's analysis will proceed accordingly. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

Here, there is no dispute that Ms. Carter has established the first three elements of a prima facie pregnancy discrimination case. The parties dispute only whether VNA's RIF policy produced a residual work force of persons who were not pregnant or performing at a level lower than Ms. Carter.

Ms. Carter contends that because the residual work force contained six clinical consultants from other Baltimore-area hospitals, who were not pregnant, that the fourth prong is established. The Court disagrees. First, it is undisputed that VNA's historical practice, when implementing the RIF policy, was to commence the winnowing process on a site-specific basis. Only after selecting the site and the position to be eliminated did VNA apply the RIF policy's selection criteria. Under this company practice, Ms. Carter concedes that she was the least senior clinical consultant at GSH:

> **Q:** Was it explained to you that the way the decisions are made is that they decide which facility was going to be affected and then make the RIF decision based on who in that particular facility has the least seniority?
>
> **A:** That's how, yes, I don't remember who explained that to me, that is their historical practice, yes.
>
> **Q:** Based on what was described to you as the historical practice, you did have the least departmental seniority at Good Samaritan Hospital, correct?
>
> **A:** Based on the historical practice, yes.

(Carter Dep. 162:6-18, Oct. 4, 2011, ECF No. 19-2).

Secondly, Ms. Carter's contention that VNA was, nevertheless, duty bound to adhere to the RIF policy's text is unpersuasive. To be sure, the RIF policy makes clear that "[t]he Company's Executive Officer and the Director, Human Resources may change or modify all provisions [of the policy] without prior notice to employees." (RIF Policy at 6, ECF No. 19-7).

Thirdly, although Ms. Carter may disagree with the process used, VNA's implementation of its RIF policy does not amount to evidence of discrimination. In verity, Ms. Carter does not disagree with the Court's assessment:

> **Q:** Am I correct in understanding that you are not challenging the decision to eliminate a clinical consultant position, you're just claiming it should have been somebody other than you?

**A:** It should have been someone other than me, based on the policy in place at that time, yes.

**Q:** But you're not claiming the decision to eliminate a clinical consultant position was discriminatory, are you?

**A:** No, not -- no.

(Carter Dep. 155:2-17). Moreover, a company's autonomy in making employment decisions and implementing its RIF policy is well established within the Fourth Circuit.[1]

---

[1] Mereish v. Walker, 359 F.3d 330, 338-39 (4th Cir. 2004) ("[t]he very nature of a RIF is that some workers must be let go, and difficult decisions have to be made."); see Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) ("[Personnel decisions are] the kind of business decision[s] that we are reluctant to second-guess."); DeJarnette, 133 F.3d at 299 ("[T]his Court 'does not sit as some kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'" (citation omitted)); Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization . . . ."); Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417-19 (4th Cir. 1991) (acknowledging that a business should have the autonomy to decide which employees to terminate in a reduction-in-force based upon the future needs and business requirements of the employer); Page v. Bolger, 645 F.2d 227, 230 (4th Cir. 1981) (stating that employers legally must be able to make employment RIF decisions that disfavor qualified employees "on the basis of comparative evaluation of their qualifications with those other applicants."); see also Groves v. Cost Planning & Mgmt. Int'l, Inc., 372 F.3d 1008, 1010 (8th Cir. 2004) (stating that in a RIF case an "allegation that another employee should have been fired instead questions a reasonable business decision by [the employer], a decision courts do not second guess."); Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 896 (6th Cir. 1997) ("In a RIF, qualified employees are going to be discharged."); Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1220 (3d Cir. 1988) (stating that "the essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may

VNA's decision, harsh as it may seem to Ms. Carter was not, as a matter of law, discriminatory. As the Fifth Circuit observed in Turner v. Tex. Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977), "Title VII . . . [does] not protect against unfair business decisions [sic] only against decisions motivated by unlawful animus." (rev'd on other grounds by Burdine v. Tex. Dep't of Cmty. Affairs, 647 F.2d 513 (5th Cir. 1981)).

Assuming, arguendo, that Ms. Carter could establish a prima facie case of pregnancy discrimination, VNA still is entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for terminating Ms. Carter. Specifically, Ms. Carter was terminated, along with thirty-one other VNA employees, as a result of the 2010 RIF after VNA used its business judgment to identify a site and position to be eliminated and applied the RIF policy.

True, Ms. Carter does raise a few alleged disputes regarding (1) whether VNA terminated Ms. Carter or her position, (2) the temporal proximity between Ms. Carter's request for family leave and her temination, (3) whether VNA decided to fire Ms. Carter before or after she applied for family leave, (4) whether Ms. Bevans applied for leave under the FMLA, and (5) whether Mss. Carter and Bevans are similarly situated employees.

---

nevertheless have to be fired").

These alleged disputes are of no moment, however, because Ms. Carter does not rebut the legitimate, non-discriminatory reason that VNA has proffered to support its decision to terminate her. Said differently, Ms. Carter has not met her burden of proving both that VNA's stated reason was false and that discrimination was the real reason for her termination. Accordingly, the Court will grant VNA's Motion on Ms. Carter's pregnancy discrimination claim and dispense with analysis of the parties' arguments pertaining to mitigation of damages.

**2. FMLA**

The Court will likewise grant VNA's Motion for Summary Judgment on the FMLA retaliation claim because Ms. Carter withdrew the claim during her deposition. Even assuming the FMLA claim was not withdrawn, however, Ms. Carter has not established a prima facie case of retaliation.

Courts analyze FMLA retaliation claims under the same McDonnell Douglas burden-shifting framework they use for PDA claims. Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 550-51 (4th Cir. 2006). The plaintiff "must first make a prima facie showing that [she] engaged in a protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Id. at 551. Temporal proximity between the protected activity and the adverse employment decision

"satisfies the less onerous burden of making a prima facie case of causality." Santorocco v. Chesapeake Holding Co., No. AW-08-3049, 2010 WL 2464972, at *7 (D.Md. June. 10, 2010) (quoting Blankenship v. Buchanan Gen. Hosp., 140 F.Supp.2d 668, 672 (W.D.Va. 2001) (internal quotations omitted)). As with a pregnancy discrimination claim, once the plaintiff establishes a prima facie case, the defendant bears the burden of showing a legitimate, non-discriminatory reason for the adverse employment action. Yashenko, 446 F.3d at 551.

Once the defendant meets that burden, the plaintiff must show that the proffered reason for the adverse employment action was pretextual. Id. Additionally, "the weakness of the employer's explanation, standing alone, is not sufficient [to show pretext]; rather, the employee must produce affirmative evidence of discriminatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence." Blankenship, 140 F.Supp.2d at 674.

Here, there is no dispute that Ms. Carter has established the first two elements of a prima facie FMLA retaliation claim. The parties dispute only whether Ms. Carter's termination is causally connected to her request for FMLA leave. Assuming, as Ms. Carter asserts, that she applied for FMLA leave before VNA selected her for termination, the temporal proximity between her request for FMLA leave and her termination would ordinarily

satisfy the causality element of a prima facie FMLA retaliation claim. Ms. Carter's withdrawal of her FMLA retaliation claim, however, militates against this Court finding that a prima facie case has been made.

During her deposition, Ms. Carter expressed her belief that she was terminated based on her pregnancy, rather than her request for FMLA leave:

> **Q:** Why do you believe you were selected for termination?
>
> **A:** I believe I was selected for termination because I was pregnant.
>
> **Q:** Is there any other reason that you believe that you were selected for termination?
>
> **A:** No.

(Carter Dep. 164:9-15). Ms. Carter repeated this assertion later in the deposition:

> **Q:** You're claiming the only reason that you were terminated was because you were pregnant, correct?
>
> ...
>
> **A:** I believe that's true.

(Carter Dep. 165:8-13). To establish a prima facie FMLA retaliation claim, Ms. Carter must establish that VNA terminated her because she engaged in the protected activity of requesting FMLA leave, not because she was pregnant. This distinction is not merely academic. To hold otherwise would transform a FMLA

retaliation claim into the previously disposed of pregnancy discrimination claim. See DeJarnette, 113 F.3d at 296 ("In a pregnancy discrimination case, the plaintiff thus bears the ultimate burden of establishing that the defendant discriminated against her 'because of' her pregnancy.").

Assuming, arguendo, that Ms. Carter did not withdraw her FMLA retaliation claim and that she can establish a prima facie case, VNA, as discussed at length above, has articulated a legitimate, non-retaliatory reason for Ms. Carter's termination. Furthermore, several factors undermine any claim that VNA's stated reason for termination was pretextual. Most notably, Shelley Garfield, Ms. Carter's supervisor, encouraged Ms. Carter to apply for FMLA leave once she learned of Ms. Carter's pregnancy. (Carter Dep. 184:2-11). Additionally, during her deposition, Ms. Carter admitted that she had applied for and taken FMLA leave in the past while working for VNA and was not subject to any retaliation. (Carter Dep. 199:14-201:21).

Given Ms. Carter's ultimate failure to show that VNA's 2010 RIF was not the real reason for her termination, the Court will grant VNA's Motion for Summary Judgment as to the FMLA retaliation claim and dispense with analysis of the parties' arguments pertaining to mitigation of damages.

### 3. Cross-Motion for Summary Judgment

Ms. Carter's Cross-Motion for Summary Judgment will be stricken for failing to satisfy the good cause requirement of Federal Rule of Civil Procedure 16(b)(4) and for failing to adhere to this Court's Scheduling Order and Local Rules.

Federal Rule of Civil Procedure 16(b)(4) provides that scheduling orders "may be modified only for good cause with the judge's consent." Accordingly, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to file dispositive motions. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). The movant can satisfy the good cause requirement only "by showing that, despite due diligence, it could not have [filed the dispositive motion] in a reasonably timely manner." Holliday v. Holliday, No. 09-cv-01449-AW, 2012 WL 1409527, at *3 (D.Md. Apr. 20, 2012). Absent a showing of good cause, untimely cross-motions for summary judgment are subject to being stricken. Zuffa v. Thomas, No. 8:11-cv-00673-AW, 2012 WL 6617334, at *3 (D.Md. Dec. 18, 2012) (striking defendant's cross-motion for summary judgment based on its failure to show good cause why its dispositive motion was not timely filed). Furthermore, the Local Rules provide that:

> In a two-party case, if both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion.

> After that motion has been filed, the other party shall file a cross-motion accompanied by a single memorandum (both opposing the first party's motion and in support of its own cross-motion), the first party shall then file an opposition/reply, and the second party may then file a reply.

Local Rule 105.2.c (D.Md. 2011). Failure to adhere to this Local Rule also warrants striking a party's cross-motion for summary judgment. <u>See, e.g.</u>, <u>McReady v. O'Malley</u>, 804 F.Supp.2d 427, 438 n.5 (D.Md. 2011) (striking plaintiff's cross-motion for summary judgment because it was filed in violation of Local Rule 105.2.c.).

On June 18, 2012, this Court issued a Scheduling Order, which provided that all dispositive pretrial motions were to be filed by November 30, 2012. (ECF No. 9). The Scheduling Order included two additional instructions: (1) the parties were to file a Status Report on October 31, 2012, providing, in part, "[w]hether any party intends to file a dispositive pretrial motion"; and (2) "[i]f more than one party intends to file a summary judgment motion, the provisions of Local Rule 105.2.c apply." (<u>Id.</u>)

Several months later, on October 31, 2012, the parties submitted a Joint Status Report and Motion to Extend Time For Discovery and Dispositive Motions ("Joint Status Report"). (ECF No. 17). In the Joint Status Report, the parties requested that the deadline for filing dispositive motions be extended. (<u>Id.</u>)

The Joint Status Report also stated that "Defendant anticipates filing a dispositive pretrial motion after the parties complete discovery." (Id.) At no time did Ms. Carter ever notify VNA or the Court that she intended to file a dispositive pretrial motion. Accordingly, such language was not included in the parties' Joint Status Report.

The Court granted the parties' request to extend the deadline for filing dispositive pretrial motions to January 2, 2013. (ECF No. 18). VNA timely filed its Motion for Summary Judgment on January 2, 2013. (ECF No. 19). Thereafter, on January 11, 2013, the parties filed a Consent Motion to extend the time for Ms. Carter to file a response to VNA's Motion for Summary Judgment. (ECF No. 20). Ms. Carter's counsel again failed to notify this Court or VNA's counsel that she intended to file a dispositive pretrial motion of her own. The Court granted the parties' request to extend the deadline for filing a response to Defendant's Motion to February 5, 2013. (ECF No. 21).

Finally, on February 5, 2013, Ms. Carter filed a Consolidated Opposition to the Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion for Summary Judgment"). (ECF No. 22). The filing of Plaintiff's Cross-Motion for Summary Judgment was the first time VNA learned that Ms. Carter intended to pursue her own

dispositive pretrial motion.  In her Motion, Ms. Carter seeks partial summary judgment based on her assertion that she has established prima facie cases of pregnancy discrimination and FMLA retaliation.

Ms. Carter does not make a showing of good cause.  Instead, she argues that only after VNA filed its Motion for Summary Judgment did she realize that a cross-motion for partial summary judgment would be necessary.  This argument is without merit as it clearly does not support a showing of due diligence on Ms. Carter's part.

Secondly, Ms. Carter argues that her cross-motion for partial summary judgment is not truly a dispositive motion, since a ruling in her favor would not dispose of the entire case.  This Court finds such reasoning misguided.  Motions for partial summary judgment are, of course, subject to requirements of timeliness.  See Capitol Indemnity Corp. v. The Mountbatten Surety Co., No. Civ.A. DKC993195, 2000 WL 1832646, at *1 (D.Md. Nov. 22, 2000) (noting that plaintiff's motion for partial summary judgment could be subject to denial due to its untimeliness).

Accordingly, Ms. Carter's Cross-Motion for Partial Summary Judgment shall be stricken.

## III. CONCLUSION

For the foregoing reasons, this Court will, by separate order, grant VNA's Motion for Summary Judgment and Motion to Strike Ms. Carter's Cross-Motion for Summary Judgment. (ECF Nos. 19, 23)

Entered this 30th day of July, 2013

/s/

_____
George L. Russell, III
United States District Judge